## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-24177-DAMIAN

DAWN INTERNATIONAL LTD.,
AN IRISH LIMITED COMPANY,

      Plaintiff,

v.

JACOB FLEISHMAN SALES, INC.,
A FLORIDA CORPORATION,

      Defendant.

_____/

## <u>REPORT AND RECOMMENDATIONS</u>

**THIS MATTER** comes before the Court on Plaintiff, Dawn International LTD.'s ("Dawn International") Motion for Summary Judgment (ECF No. 58) and Defendant, Jacob Fleishman Sales, Inc.'s ("Fleishman") Motion for Partial Summary Judgement (ECF No. 60).  The Motions are referred to the undersigned for reports and recommendations pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and the Magistrate Rules of the Local Rules of the Southern District of Florida. (ECF No. 81).  Upon review of the Motions, Plaintiff's Response to Defendant's Motion (ECF No. 69), Defendant's Response to Plaintiff's Motion (ECF No. 71), Plaintiff's Reply in support of its Motion (ECF No. 74), Defendant's Reply in support of its Motion (ECF No. 76), and the corresponding Statements of Facts (ECF Nos. 59, 61, 75), the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 58) be **GRANTED in part and DENIED in part**, and Defendant's Motion for Partial Summary Judgment (ECF No. 60) be **DENIED**.

1

I.      **BACKGROUND**

    A.      **Factual Background**

    The relevant facts, which are undisputed unless otherwise noted, are as follows.[1]

    Dawn International, an Irish limited company, is an international food broker.  (PSMF at ¶ 1).  Through its wholly owned subsidiary Dawn USA, Inc. ("Dawn USA"), Dawn International supplies pork products from European producers to American customers, including Fleishman.  (*Id.*)  Fleishman is a commercial distributor of pork products, not an endpoint consumer.  (PSMF at ¶ 4).  For years, it has ordered thousands of pounds of pork from Dawn[2] to sell to third parties.  (PSMF at ¶¶ 4, 12).

    Fleishman submitted purchase orders ("P.O.") to Dawn USA.  (PSMF at ¶ 2); (DSMF at ¶ 5).  For each purchase order, Dawn International issued a sales confirmation to William "Bill" Collins, a broker who sold pork on Dawn USA's behalf, and then endeavored to deliver the order.  (DSMF at ¶¶ 7, 10).  Each sales confirmation contained the following bolded statement at the bottom of the document: "Terms and Conditions apply and are available on request."  The confirmations were not sent to Fleishman.  (DSMF at ¶ 11).[3]

    After the pork products were delivered to the United States, Dawn International would issue an invoice to Fleishman.  The invoice directed Fleishman to make payment to Dawn USA,

---

[1] The undisputed facts are drawn from Plaintiff's Statement of Material Facts (ECF No. 59) ("PSMF"), Defendant's Statement of Material Facts in Opposition (ECF No. 70) ("DSMFO"), Plaintiff's Reply Statement of Facts (ECF No. 75) ("PRSF"), Jacob Fleishman Sales, Inc.'s Statement of Material Facts in Support of Its Motion for Summary Final Judgment (ECF No. 61) ("DSMF"), and Plaintiff's Statement of Material Facts in Opposition (ECF No. 68) ("PSMFO").  Unless noted otherwise, the Parties' statements of facts are supported by the cited exhibits.

[2] These facts are undisputed.  Notwithstanding, Fleishman argues herein that it purchased pork from Dawn USA, not Dawn International.  Plaintiff asserts that Dawn International and Dawn USA are part of the same enterprise, with Dawn USA acting as Dawn International's agent.  *See* discussion *supra* Part III.A.i.  In its statement of material facts, Plaintiff avers the Dawn USA acted as its agent, but cites in support its own unsworn complaint, which is not evidence.

[3] Plaintiff's Response purports to dispute this fact, citing evidence that Fleishman's corporate representative testified that she had not seen a form like the confirmation before.  PSMFO at ¶ 11.  Plaintiff did not advance evidence that would support an inference that it sent confirmations to Fleishman.

in Cordele, Georgia, and Fleishman made its payments to Dawn USA. (DSMF at ¶¶ 18, 19). Each invoice also provided in bold, "Copy of Our Terms and Conditions of Business are available upon request." (PSMF at ¶ 8). Dawn International's Terms and Conditions include a clause stating that "[t]hese conditions and all other express terms of any contract with [Dawn International] shall be governed and construed in accordance with the Laws of the Republic of Ireland." (ECF No. 1-3 at 3).

The Parties' dispute arises from a series of transactions that began in Summer of 2021 with a series of P.O.s placed by Fleishman for baby back ribs. (ECF No. 27 at ¶¶ 12-14). Defendant alleges that the ribs sent pursuant to these P.O.s began arriving at its warehouse in Miami in October of 2021. Defendant alleges that it kept the ribs frozen in storage and did not immediately inspect the ribs. In May 2022, Defendant alleges that it was notified by a third-party "cooker" that some of the ribs sold by Fleishman, originating from Dawn International, had significant problems and were unfit for sale. DSMF at ¶ 20.

On May 17, 2022, Fleishman employee Karen Azari notified Bill Collins that approximately ten percent of a load of Tican[4] ribs were miscuts and that she would need to find a new customer for the miscut ribs. (ECF No. 61-11). On June 15 and 16, 2022, Dawn International CEO Pat Crowley inspected 60 boxes of ribs delivered to Fleishman's facility in Miami, Florida. (DSMF at ¶¶ 22–24); (PSMFO at ¶¶ 22–24). A report authored by Crowley indicated that ribs in 59 of 60 boxes were defective or failed to comply with quality specification. (DSMF at ¶ 24).

In an email sent on August 4, 2022, Fleishman President and CEO Roy Fleishman ("Roy") instructed Fleishman personnel to refuse acceptance of any shipments from Dawn and informed them that Fleishman would not be doing any business with Dawn until the issue with the ribs was

---

[4] Dawn International sourced the ribs purchased by Fleishman from nonparty Tican Fresh Meat A/S ("Tican"). (PSMF at ¶ 19; ECF No. 59-3 at ¶ 10; DSMFO at ¶ 19).

solved.  (PSMF at ¶ 41); (DSMFO at ¶ 41).  On August 11, 2022, Roy sent an email to Pat Crowley instructing him to halt all shipments from Dawn International until the dispute regarding the defective ribs was settled.  (PSMF at ¶ 40); (ECF No. 59-3 at ¶ 12); (DSMFO at ¶ 40).  On September 21, 2022, Crowley demanded assurances from Roy that Fleishman would pay for the pork bellies delivered to Fleishman and that it would accept and pay for future shipments sent pursuant to confirmed purchase orders.  (PSMF at ¶ 42); (DSMFO at ¶ 42).  Fleishman did not provide any such assurances.  (PSMF at ¶ 43); (DSMFO at ¶ 43).

The Parties' alleged losses fall into three categories.  Plaintiff seeks recovery of the amounts invoiced for the pork products delivered, but for which Defendant has refused to pay.  Plaintiff additionally claims damages on contracts for pork products ordered by Defendant, but not delivered to Defendant. In its Counterclaim, Defendant seeks to recover the amounts it paid for pork products delivered by Plaintiff that failed to conform with the quality Defendant ordered.

**B.    Procedural History**

Dawn International initiated this breach of contract action.  Its Complaint alleges seven Counts.  (ECF No. 1).  Count I charges Fleishman with breach of nine contracts for the sale of pork products pursuant to which Dawn International delivered the pork ("Delivered Contracts"). In Count II, Dawn International alleges that Fleishman breached another 21 contracts that Fleishman repudiated before Dawn International's time for performance had come ("Outstanding Contracts").  Next, Plaintiff brings alternative claims for Account Stated (Count III) and Open Account (Count IV), each asserting damages for the sum of the Delivered Contracts and Outstanding Contracts.  Counts V, VI, and VII are additional alternative claims with respect to the delivered pork only: Count V is a claim for Goods Sold, Count VI is a claim for Unjust Enrichment, and Claim VII is an action for replevin.

Fleishman answered the Complaint and filed counterclaims.  (ECF No. 11).  Fleishman's Amended Counterclaim pleads five counts: breach of an installment contract, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, breach of a storage contract, and, in alternative to an enforceable storage contract, unjust enrichment.  (ECF No. 27).  Plaintiff answered the counterclaim.  (ECF No. 28).  Pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 56.1, the parties now cross-move for summary judgment, (ECF No. 58), and partial summary judgment, (ECF No. 60), respectively.

## II.   LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must identify an absence of evidence to support the nonmoving party's case.  *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party must support its assertion that a genuine material fact remains in dispute by citing to specific parts of the record.  *Sutton v. Royal Caribbean Cruises Ltd.*, 285 F. Supp. 3d 1349, 1351 (S.D. Fla. 2018) ("In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, answers to interrogatories, and admissions that a specific fact exist demonstrating a genuine issue for trial."), *aff'd*, 774 F. App'x

508 (11th Cir. 2019).  A fact or issue is material for purposes of summary judgment only if it might affect the outcome of the suit under the governing law.  *Webb v. Carnival Corp.*, 360 F. Supp. 3d, 1343 (S.D. Fla. 2017).  Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial."  *Id.* at 1344 (citing *Celotex Corp.*, 477 U.S. at 323).

In considering a motion for summary judgment, a court must evaluate the evidence and make all inferences in the light most favorable to the nonmoving party.  *Sutton*, 285 F. Supp. 3d at 1351 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586).  However, the nonmoving party may not merely point to a scintilla of evidence that creates a metaphysical doubt about an issue; instead, the evidence must be sufficient to allow a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co*., 475 U.S. at 586–87.  Evidence is required; conclusory and unsubstantiated averments will not do, *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000), and citations to specific record evidence are necessary.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116–17 (11th Cir. 1993).  "When a party moves for final, not partial, summary judgment, we have stated that 'it [becomes] incumbent upon the [nonmovant] to respond by, at the very least, raising in their opposition papers any and all arguments or defenses they felt precluded judgment in [the moving party's] favor.'" *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (quoting *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1264 (11th Cir. 2001)) (alterations in original).

## III.    ANALYSIS

Dawn International moves for summary judgment in its favor as to Count I (breach of contracts pursuant to which Plaintiff delivered goods to Defendant), Count II (breach of contracts that Defendant repudiated before Plaintiff had the opportunity to perform), and Count V (claim for

goods sold, pled in alternative to Count I) of its Complaint.  Plaintiff further moves for summary judgment as to all Counts contained in Fleishman's Amended Counterclaim.

Fleishman moves for partial summary judgment on two issues, without specifically moving for summary judgment on any claim, counterclaim, or affirmative defense.  First, Fleishman seeks entry of judgment on the fact that Fleishman had no contracts with Plaintiff; rather, Fleishman had a single installment contract with Dawn USA.  Second, if the Court finds that a contract between Fleishman and Dawn International exists, then Defendant alternatively seeks summary judgment that Plaintiff breached the implied warranty of merchantability by delivering substandard goods. Plaintiff's Response interprets Defendant's first issue as challenging Plaintiff's standing to bring these claims as the real party in interest, a characterization Defendant adopts in its Reply. Accordingly, the undersigned has similarly analyzed the issue as Defendant's entitlement to summary judgment that Plaintiff is not the real party in interest to bring these claims.

The undersigned recommends denial of Plaintiff's Motion for summary judgment on its contract claims because it failed to adduce evidence that the contracts alleged in Counts I and II of the Complaint were in fact formed.  Plaintiff is entitled to partial summary judgment on Count V of its complaint for Goods Sold.  Plaintiff is not entitled to summary judgment on Defendant's counterclaims or its affirmative defenses of waiver and acceptance of the goods.[5]  Defendant's Motion for summary judgment is due to be denied in all respects because, despite Plaintiff's failure to prove the express contracts alleged in Counts I and II of the Complaint, the undisputed evidence shows that contracts arose between the Parties as a result of their conduct.  Accordingly, the evidence is sufficient that Plaintiff has standing, as the real party in interest, to bring these claims

---

[5] In its Motion, Plaintiff states that it seeks summary judgment in its favor on its affirmative defenses of laches, failure to mitigate damages, and unclean hands.  However, the memorandum of law omits any discussion of Plaintiff's affirmative defenses.  Plaintiff's passing reference to these affirmative defenses is insufficient to warrant further discussion of its entitlement to summary judgment on these bases.

against Fleishman. And finally, Defendant is not entitled to summary judgment on the fact that Plaintiff breached the installment contract; rather, the fact finder will have to decide if Plaintiff's performance materially breached the Parties' agreement.

     **A.**    **Governing Law**

As a threshold matter, Plaintiff's Motion for summary judgment argues that Irish law should govern the contract claims in this case. The Complaint alleges that each set of purchase order and sales confirmation formed separate contracts between Dawn International and Fleishman, and that each of those contracts incorporated Dawn International's Terms and Conditions of Sale (the "Conditions"). The Conditions provide that any contract with Dawn International is governed by the laws of the Republic of Ireland. Defendant denies that any contract exists between the Parties, but if one arose based on their dealings, it did not include the Conditions, which were not communicated to Fleishman pre-delivery, only post-sale via invoices.[6]

Plaintiff urges that UCC § 2-207(2) is the proper vehicle to determine the question of whether the Parties formed an express contract and what terms it includes.[7] Section 2-207, codified at Fla. Stat. § 672.207, provides,

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to . . . those offered . . . .

> (2) . . . . Between merchants such terms become part of the contract unless:

>     (a) The offer expressly limits acceptance to the terms of the offer;

>     (b) They materially alter it; or

---

[6] "Dawn International Ltd. falsely claims in their Complaint that these corresponding sales confirmations were provided to Jacob Fleishman Sales Inc." (ECF No. 60 at 2).

[7] Although the Parties disagree on which forum's laws govern their contract claims, both Parties apply Article 2 of the Uniform Commercial Code as it is codified in Chapter 672, Florida Statutes, in arguing whether the Parties are bound by the Conditions. The undersigned does the same.

> (c) Notification of objection to them . . . is given within a reasonable time
> after notice of them is received.

Plaintiff contends that because (1) Dawn International and Fleishman are both merchants, (2) the Conditions did not materially alter the agreement, and (3) Fleishman failed to object to them within a reasonable time, the Conditions became part of the contract.  And because the contract includes the Conditions, under Florida's choice of law rules, the governing law provision in the Conditions is presumed valid.

Contrary to Plaintiff's allegation, the Conditions were not made part of any contract between Dawn International and Fleishman because Dawn International never actually conveyed any document to Fleishman before it delivered the pork.  To state the obvious, an offeree must in fact send a written acceptance or confirmation stating additional terms before such terms can become part of a contract between merchants.  *See* Fla. Stat. § 672.207; *Cornett Restoration LLC v. Am. Slate Co.*, No. 07-cv-1541, 2009 WL 2020766, at *3 (S.D. Ind. July 8, 2009) ("[The seller] has not shown that it sent [the buyer] any document with the terms and conditions, including the arbitration clause, in connection with this transaction.  The court therefore need not address whether the arbitration clause was included in the contract terms through UCC Section 2-207(2) . . . .").  There is no dispute that Dawn International sent sales confirmations for Fleishman's orders to Bill Collins, a broker for Dawn USA, not to Fleishman.  Indeed, a Fleishman representative testified that she had never seen a sales confirmation from Dawn International before one was shown to her at deposition and denied that such confirmations were sent to anyone at Fleishman.[8]

In its Motion for summary judgment, Plaintiff argues a new theory that it did not plead: even though Fleishman never received the sales confirmations, Fleishman was nonetheless on notice of the Conditions because the invoices, which *were* sent to Fleishman, similarly reference

---

[8] (ECF No. 59-1 at 57:16–24).

their availability upon request and Fleishman never objected to them.  Defendant responds that the invoices were sent to Fleishman only *after* receiving shipment of product, not before.[9]  When an offeree performs rather than communicate its acceptance in writing, an "agreement for sale of the goods ar[ises] by virtue of the parties' conduct, as opposed to the exchange of any forms." *Dependable Component Supply Corp. v. Lear Corp.*, 06-61105-CIV, 2009 WL 10696245, at *6 (S.D. Fla. July 2, 2009) (citing *Premix-Marbletite Mfg. Corp. v. SKW Chems., Inc.*, 145 F. Supp. 2d 1348, 1355 (S.D. Fla. 2001).  In such case, that agreement consists only of "those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provision" of the UCC.  Fla. Stat. § 672.207(3).  Because Fleishman's purchase orders did not contain the Conditions, they did not become part of the contract.

Plaintiff does not meaningfully argue that the post-delivery invoices that it sent to Fleishman formed a contract for each sale; rather, it primarily relies on the fact that Fleishman repeatedly paid the invoices without objecting to the Conditions as an indication that Fleishman could not plausibly be surprised by the addition of these terms.  Yet, Plaintiff acknowledges that the cases have found—contrary to its argument—that a form sent *after* a contract has arisen between merchants will not bind the other party to its additional terms.  *See, e.g.*, *Dependable Component Supply Corp.*, 2009 WL 10696245, at *6 (rejecting argument that buyer's failure to object to a term expressed on seller's post-delivery invoice constituted acquiescence).  Each contract arose when the pork Fleishman ordered was delivered.  It is therefore irrelevant that Defendant never requested a copy of the Conditions nor objected to them.

It is undisputed that Dawn International failed to communicate its Conditions to Fleishman prior to its own performance.  Accordingly, to the extent Plaintiff moves for summary judgment

---

[9] (ECF No. 59-1 at 61:8–10).

that Irish law governs the contract claims, the undersigned recommends that the Motion be **DENIED**.

> **B.    Plaintiff Is Not Entitled to Summary Judgment in Its Favor on Counts I and II of the Complaint.**

Dawn International moves for summary judgment on Counts I and II of its Complaint. In its cross Motion, Fleishman does not specify the Counts on which it seeks partial summary judgment, but rather seeks entry of summary judgment on the fact that "there is no contract between Plaintiff and Jacob Fleishman Sales, Inc."[10]

Count I "is an action for breach of contract regarding the Delivered Contracts." (ECF No. 1 at ¶ 22). Plaintiff alleges that "each P.O. submitted by Fleishman, once confirmed by Dawn International's corresponding sales confirmation, formed an individual sales contract between Plaintiff and Defendant." (*Id.* at ¶ 12). Count I alleges breach of the "Delivered Contracts," which are defined as "the P.O.s and confirmations which have been fulfilled." (*Id.* at ¶ 14). The Complaint alleges that "Fleishman breached the Delivered Contracts by failing to pay Plaintiff" the invoiced amount plus interest at the rate of five percent, as provided for by the Conditions. (*Id.* at ¶ 24). Plaintiff demands summary judgment in the amounts invoiced, plus interest accrued and attorneys' fees, again as provided for by the Conditions that Plaintiff urges is part of the Parties' express written contracts.

Plaintiff similarly moves for summary judgment on Count II of the Complaint, which states a claim for breach of contract with respect to 21 orders of pork that Fleishman placed but repudiated before Dawn International's time for performance had come. Like Count I, Count II of the Complaint travels entirely on the premise that "each [purchase order] submitted by Fleishman, once confirmed by Dawn International's corresponding sales confirmation, formed an individual

---

[10] (ECF No. 60 at 1).

sales contract between Plaintiff and Defendant." (ECF No. 1 at ¶ 12). The Complaint alleges that Fleishman breached 21 so-called "Outstanding Contracts" by refusing to accept delivery and pay for pork products that it ordered.

Dawn International's Motion argues that regardless of whether Florida law or Irish law applies, it is entitled to summary judgment that Fleishman has breached the Delivered Contracts. Under Florida law, a claim for breach of contract requires proof of: (1) the existence of a contract, (2) material breach of that contract, and (3) damages resulting therefrom. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). Dawn International avers that establishing a breach of contract under Irish law is the same. First, Plaintiff's Motion says that "[p]ursuant to the Delivered Contracts and the Terms and Conditions of Sale, Fleishman was obligated to pay" for the pork products that Dawn International delivered, and Fleishman has failed to do so. (ECF No. 58 at 9). In the alternative, Dawn International argues that "[e]ven setting aside the Terms and Conditions of Sale," Fleishman is obligated to pay for the goods under Florida's UCC. (*Id.*)

As pled, Plaintiff's breach of contract claims cannot be construed as anything other than a claim for breach of *express* contracts that were formed when, according to the Complaint, "[e]ach purchase order . . . submitted by Fleishman to Dawn USA was confirmed and accepted by a sales confirmation document provided to Fleishman by Dawn International." (ECF No. 1 at ¶ 9). Plaintiff's statement of material facts asserts the same: that a contract governed by the Conditions was formed when Fleishman submitted a P.O. "which was confirmed by the issuance of a sales confirmation from Dawn," citing only the unverified Complaint in support. (PSMF at ¶ 22). However, there is no record evidence to support Plaintiff's allegation that the sales confirmations were sent by Plaintiff to Fleishman; and Fleishman's denial of receiving the confirmations is not meaningfully disputed. (DSMF at ¶¶ 7, 11); (PSMFO at ¶ 7). Plaintiff does not advance in its

12

statement of facts any evidence that it sent the confirmations to Fleishman, but rather avers that it issued a sales confirmation "to the representative facilitating the sale," citing to the sales confirmations attached to the Complaint (PSMF at ¶ 5).[11] The sales confirmations are addressed to Dawn USA's broker, Bill Collins. No further evidence is advanced to show that either Dawn entity transmitted the sales confirmations to Fleishman.

Plaintiff's Motion does not squarely address the failure in the evidence to prove what it has alleged—specifically, that the confirmations allegedly forming express contracts that Fleishman breached were *not* sent to Fleishman. Notwithstanding, Plaintiff now requests summary judgment on Count I on its new theory that even if the Conditions are not enforceable, Fleishman's failure to pay for pork products delivered also constitutes a breach of contract under Florida's UCC.

To the extent that Plaintiff's Motion for summary judgment is predicated on Defendant's breach of the Conditions, the Motion must be denied because the evidence does not support Plaintiff's allegation that an express contract between the Parties was formed as alleged in the Complaint. And to the extent Plaintiff seeks summary judgment for claims under Chapter 672 of the Florida Statutes, that too must be denied because Plaintiff failed to plead such causes of action in Counts I or II. *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003) (affirming grant of summary judgment to defendant on plaintiff's theory that defendant failed to give reasonable notice of contract termination because plaintiff did not plead such a claim and raised it for the first time at summary judgment); *Gilmour v. Gates, McDonald & Co.*, 382

---

[11] The vague reference to an unidentified "representative" might suggest the possibility that it was a representative of Fleishman to whom Dawn International issued the sales confirmations; indeed, Defendant disputes the fact in its opposition and cited to record evidence of Fleishman's denial of receiving the sales confirmations. The exhibits—though they were not attached as exhibits to Plaintiff's Motion—prove otherwise. Considering the importance of this key fact, it appears that Plaintiff intentionally led the Court on a wild goose-chase.

F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

In Section IV of its Motion for summary judgment, Plaintiff argues only that "Dawn is similarly entitled to summary judgment [on Count II of the Complaint] as there is no genuine issue of material fact that Fleishman anticipatorily repudiated the Outstanding Contracts." (ECF No. 58 at 12). This argument assumes that the Outstanding Contracts were formed. The Complaint alleges no other theory under which Fleishman would be obligated to buy the pork it requested via purchase orders but which Dawn International had not yet delivered. Accordingly, Plaintiff has not demonstrated entitlement to summary judgment on Count II.

Fleishman opposes summary judgment on Dawn International's contract claims and cross moves for summary judgment on the fact that it had no contracts with Dawn International, but rather, just one contract with Dawn USA. In support of its Motion, Fleishman cites cases in which Florida courts have held that a parent company cannot maintain an action against a third-party who has aggrieved its wholly-owned subsidiary but the parent has suffered no direct injury. Fleishman does not specify which Counts of the Complaint or Amended Counterclaim would be impacted by summary judgment on this issue, but the Parties mutually treat Fleishman's theory as a challenge to Dawn International's standing to bring contract claims against Fleishman. Dawn International responds that contracts between the Parties were formed because Dawn USA merely serves as Dawn International's agent.

Fleishman has failed to show that Plaintiff lacks standing to bring its claims. Beginning with Plaintiff's theory, an agent creates an enforceable agreement between its principal and the offeror when it accepts an offer on the principal's behalf. *See* RESTATEMENT (THIRD) OF AGENCY § 6.01; RESTATEMENT (SECOND) OF CONTRACTS § 52 cmt. c; 2 WILLISTON ON CONTRACTS § 6:28

(4th ed. 2024).  If Dawn USA served as Dawn International's agent in dealing with Fleishman, then an enforceable contract between Dawn International and Fleishman was created when Dawn USA accepted Fleishman's offer on Dawn International's behalf.

Moreover, Federal Rule of Civil Procedure 17(a)(1) grants a bailee the right to sue without joining the bailor.  Rule 17 does not extinguish the bailor's right to sue on its own behalf.  *See, e.g.*, 6A WRIGHT & MILLER, FED. PRAC. & PROC., CIV. § 1543 n.9.  It is undisputed that, in Fleishman's own words, "Dawn International, Inc. consigned all of the pork products at issue to Dawn USA, Inc."  (DSMF at ¶ 14); (PSMFO at ¶ 14).  Fleishman does not contest that Dawn International held title to the pork until such time that Fleishman purchased it.  The evidence is sufficient for Plaintiff to bring the contract claims in its name.

Accordingly, the undersigned recommends that Plaintiff's Motion for summary judgment on Counts I and II be **DENIED**, and Defendant's Motion for summary judgment on its first issue be **DENIED.**

### C.   Plaintiff Is Entitled to Partial Summary Judgment in Its Favor on Count V of the Complaint

Dawn International moves for summary judgment on Count V of its Complaint, a claim for goods sold.[12]  This Count is based on Fleishman's failure to pay for the nine deliveries of pork products that are also at issue in Count I.

Under Florida law, a claim of goods sold and delivered requires (1) proof of a sales contract between the creditor and debtor, and (2) proof that the amount claimed by the creditor represents either the agreed upon sales price or the reasonable value of the goods delivered.  *See ICool, USA,*

---

[12] The Complaint does not specify the governing law under which Plaintiff's goods sold claim originates.  Plaintiff's Motion and Defendant's Response travel on the assumption that Count V is pled as a Florida law claim.  Because performance was contemplated in Florida, under Florida's choice of law analysis, the Court agrees and applies Florida law.

*Inc. v. MBRB Sales, LLC*, No. 18-cv-62387, 2019 WL 6608796, at *3 (S.D. Fla. Dec. 5, 2019)
(citing *Alderman Interior Sys., Inc. v. First Nat'l-Heller Factors, Inc.*, 376 So. 2d 22, 24 (Fla. 2nd
DCA 1979)).  Goods sold and delivered is an alternative cause of action to a breach of contract
claim.  *See Liebherr-Mining Equip. Colmar SAS v. Castec, Inc.*, No. 11-cv-22887, 2013 WL 85179,
at *4 (S.D. Fla. Jan. 7, 2013).

      Two different pork products are at issue: ribs and bellies. The quality issues raised with
respect to the ribs are inapplicable to the delivered bellies. The undersigned will thus address them
separately.

### i.      The Delivered Pork Bellies

      On this Count, Plaintiff's Motion first argues that it is entitled to summary judgment on its
claim for goods sold with respect to the pork bellies that it delivered to Fleishman but which
Fleishman did not pay for.  In support thereof, Dawn International points to the testimony of
Fleishman representative Karen Azari in which she agreed that Fleishman had received the pork
bellies, (PSMF at ¶ 33), the affidavit of Dawn International CEO Pat Crowley in which he swears
that Fleishman has failed to pay for the pork bellies, (*id.* at ¶ 39), the purchase orders for the bellies
submitted by Fleishman showing the prices at which Fleishman offered to buy them, (ECF No. 1-
4), and the corresponding invoices issued by Dawn International showing the amounts charged,
(ECF No. 59-3 at 9–12).

      As movant, Dawn International made the requisite showing that there is no genuine dispute
that (1) Fleishman and Dawn International entered into sales contracts with respect to the delivered
pork bellies, and (2) the amount claimed by Dawn International for the unpaid deliveries was the
agreed upon sales price.  In so doing, the burden shifted to Fleishman to put forth sufficient facts
that would create a genuine issue for trial.

Fleishman does not dispute that it ordered and received the pork bellies.  (DSMFO at ¶¶ 32, 47).  Indeed, Fleishman's Response plainly says that Fleishman raises "no issue[s]" "about the quality of the pork bellies" it received, and "[i]f there is a contract between the Parties, then . . . Plaintiff is entitled to claim the amount it charged for the pork bellies."  (ECF No. 71 at 8); *see also* (DSMFO ¶¶ at 36, 39).  These admissions demonstrate that a sales contract for the bellies existed, *see Alderman Interior Sys., Inc.*, 376 So. 2d at 24 ("[P]roof of delivery and acceptance can create the inference of the existence of the sales contract."), and that Defendant has not paid the amounts due under the sales contracts.[13]

In its defense, Fleishman argues only that it is entitled to set off any amounts owed to Dawn International by its losses incurred as a result of the allegedly defective ribs.[14]  Defendant's set-off defense fails to refute the merits of Plaintiff's claim for goods sold and provides further assent to the amount Plaintiff claims for the pork bellies.  *See Federated Dep't Stores, Inc. v. Antigo Indus., Inc.*, 297 So. 2d 591, 592–93 (Fla. 3d DCA 1974) (stating that appellant's argument that it was entitled to set-off "impliedly admit[ed] the correctness of the amounts" appellee claimed).  Fleishman's reliance on its affirmative defense as a basis to avoid summary judgment in Plaintiff's favor, moreover, is not supported by any evidence cited in opposition.  Rather, Defendant merely notes that it has *alleged* the defense of set-off.

Fleishman failed to cite any record evidence from which a reasonable fact finder could conclude that Fleishman did not contract to purchase the pork bellies or that it did not assent to the amounts Dawn International seeks to charge.  Therefore, the undersigned recommends that, with respect to the delivered yet unpaid pork bellies only, Plaintiff's Motion for summary judgment in its favor on Count V of the Complaint be **GRANTED**.

---

[13] The invoiced amount for the bellies, owed to Plaintiff, is $475,410.41.
[14] Fleishman asserted an affirmative defense of set-off in its Answer.  (ECF No. 11 at 9).

ii.      **The Delivered Pork Ribs**

Plaintiff's argument for summary judgment on its claim for Goods Sold does not distinguish between the claim for the ribs and the bellies.  Defendant, by contrast, argues that Plaintiff breached a sales contract by delivering nonconforming ribs.  The evidence on which Defendant relies to support its claim that the ribs Plaintiff delivered were not what Defendant ordered is substantial.  Indeed, Plaintiff's own CEO opined that the ribs were "**<u>TOTALLY UNFIT FOR PURPOSE</u>**."  (ECF No. 61-9, Ex. 5 to Crowley Dep.).  It is without dispute that almost half of the ribs *inspected* were defective or out of specification.  (*Id.*)  And though the Parties dispute the adequacy of Defendant's revocation of acceptance of the goods, as discussed below, the evidence adduced is sufficient to create a material dispute of fact that must be resolved by the fact finder.  Finally, considering the evidence adduced by Defendant challenging the quality and conformity of the goods delivered, Plaintiff has not demonstrated the absence of a material dispute that the amount claimed by Plaintiff represents the reasonable value of the goods delivered.  The evidence advanced by Defendant creates a material dispute that is sufficient to defeat Plaintiff's entitlement to summary judgment on Count V with respect to the ribs delivered.

D.      **Disputes of Fact Preclude Summary Judgment on Counts I and II of the Amended Counterclaim**

Plaintiff moves for summary judgment on Count I and the Parties cross-move for summary judgment on Count II of the Amended Counterclaim.

The Amended Counterclaim alleges the following.  Fleishman and Dawn International entered into an installment contract, in which each shipment of pork products constituted one installment of an ongoing agreement.  In May 2022, Fleishman discovered that a "high percentage" of the ribs that were delivered in late 2021 were defective.  (ECF No. 27 at 6).  Even though Dawn International CEO Pat Crowley saw the ribs, acknowledged they were defective, and promised to

cure the nonconforming installment, Dawn International never did.  Building on these allegations, Count I is a claim for breach of the installment contract and Count II is a claim for breach of the implied warranty of merchantability.

Breach of an installment contract is governed by UCC § 2-612.  An installment contract is one which requires or authorizes the delivery of goods in separate lots to be separately accepted. Fla. Stat. § 672.612(1).  With an installment contract, the buyer may reject any nonconforming installment if the nonconformity substantially impairs the value of that installment and cannot be cured.  *Id.* § 672.612(2).  And if the seller's default or nonconforming lot on one or more installments "substantially impairs the value of the whole contract," then the seller has breached the installment contract.  *Id.* § 672.612(3).

Plaintiff seeks summary judgment on Count I of the Amended Counterclaim on the grounds that: (1) Fleishman failed to comply with the procedures for raising claims against Dawn International set forth in the Conditions, (2) Fleishman failed to come forward with sufficient evidence of its damages, and (3) under the UCC, Fleishman accepted delivery of the ribs and could not revoke its acceptance.

As discussed above, because Dawn International never sent the sales confirmations referencing the Conditions to Fleishman, Fleishman is not bound by them.  Therefore, Plaintiff's first line of attack falls flat.

Similarly, the Court can quickly reject Plaintiff's challenge to Defendant's evidence of its alleged damages.  Defendant supported its claim to have been damaged by Plaintiff's breach with an affidavit by Karen Azari, who testified as Defendant's corporate representative.  Based on her personal knowledge, she attested that due to the poor quality of the ribs, a customer returned an order for 40,000 pounds of ribs and Defendant had to replace the ribs at its own expense.  (ECF

No.61-2 at 238).  Her statements are not conclusory, nor do they appear to be based on hearsay. The failure to support her testimony with "necessary documentary or other evidence" is not, as Plaintiff contends, grounds to disregard her testimony; it calls into question only the strength, not the admissibility of these statements.

That leaves Plaintiff's argument that, under the UCC, Fleishman accepted and never revoked its acceptance of the ribs as the remaining basis on which Plaintiff moves for summary judgment on Defendant's counterclaims. Though the Motion is not explicit in this respect, the undersigned understands Plaintiff's argument to claim entitlement to its affirmative defenses Five and Seven, which respectively allege that: (1) Defendant's failure to timely identify the particular defects in the delivered ribs or effectively reject them extinguished its right to do so; and (2) Defendant's failure to seasonably notify Plaintiff of its rejection constituted acceptance of the ribs.

Under the UCC, acceptance of goods occurs when:

> (a) the buyer, after a reasonable opportunity to inspect the goods, signifies that the goods are conforming or that the buyer will take them in spite of their nonconformity; or

> (b) the buyer, after a reasonable opportunity to inspect the goods, fails to make an effective rejection as set forth in UCC 2-602(1); or

> (c) the buyer does any act inconsistent with the seller's ownership and the aggrieved seller chooses to ratify the acceptance.

*See* UCC § 2-606(1); Fla. Stat. § 672.606(1).  A buyer must pay for any goods accepted at the price contracted.  UCC § 2-607(1); Fla. Stat. § 672.607(1).  A buyer may revoke its acceptance of goods only if:

> (1) nonconformity of the goods substantially impairs their value; and

> (2) the buyer accepted the goods either

>> (a) on the reasonable assumption that their nonconformity would be cured and it has not been seasonable cured, or

(b) without discovery of the nonconformity if his acceptance was reasonably induced by the difficulty of discovering the defects before acceptance or by the seller's assurances; and

(3) the buyer notifies the seller of its revocation; and

(4) revocation occurs within a reasonable time after the buyer discovers or should have discovered the ground for it; and

(5) revocation occurs before any substantial change in the condition of the goods which is not caused by their own defects.

See UCC § 2-608; Fla. Stat. § 672.608.

Plaintiff contends that (1) Fleishman could not reject the ribs in May 2022 because rejection of goods must be within a reasonable time after their delivery, (2) Fleishman had the opportunity to inspect the ribs within a reasonable time after delivery and failed to do so, (3) although Fleishman expressed discontent with the ribs in May 2022, this did not constitute a revocation of acceptance, (4) the fact that Fleishman sold some of the ribs after reporting the defects is inconsistent with revocation; and (5) even if Fleishman rightfully rejected the goods, Fleishman failed to perform its duty under the UCC to relinquish possession and follow the reasonable instructions of the seller.  Defendant responds that it did notify Dawn International of the ribs' defects, rejected them within a reasonable time, and had a legal duty to sell the ribs in order to mitigate its damages.

As movant, Plaintiff has not demonstrated undisputed facts that entitle it to summary judgment on its affirmative defenses of waiver and acceptance.  The record evidence, some of which has been adduced by Plaintiff, reveals the Defendant notified Plaintiff of the alleged defects in the delivered ribs, that Plaintiff acknowledged same and Defendant's intent to revoke acceptance. The correspondence between the Parties, viewed in the light most favorable to the non-movant, supports an inference that Plaintiff contemporaneously treated Defendant's notice as

sufficient to revoke acceptance of the delivered ribs. A fact finder will have to determine whether Defendant effectively accepted and/or revoked its acceptance of the ribs.

Defendant seeks summary judgment on its claim that Dawn International breached the implied warranty of merchantability.  "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Fla. Stat. § 672.314.  A cause of action for breach of the implied warranty of merchantability requires that (1) the claimant was a foreseeable user of the product, (2) the product was used in the intended manner at the time of the injury, (3) the product was defective when transferred from the seller, and (4) the defect caused the injury.  *See Nature's Prods., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1321 (S.D. Fla. 2013) (citing *Amoroso v. Samuel Friedland Fam. Enters.*, 604 So. 2d 827, 833 (Fla. 4th DCA 1992)).

In support of its Motion, Defendant cites record evidence detailing the issues with the ribs. However, Defendant cannot obtain summary judgment on this claim because the question of whether Plaintiff's delivery of the ribs under the circumstances constitutes a material breach of the Parties' agreement is a question of fact to be determined by the trier of fact.  *See Hall of Fame Assocs. v. 550 Seabreeze Dev., LLC*, No. 08-60043-CIV, 2008 WL 11331652, at *2 (S.D. Fla. Sept. 11, 2008).

Accordingly, the undersigned recommends that as to Counts I and II of the Amended Counterclaim, Plaintiff's Motion for summary judgment be **DENIED** and Defendant's Motion for summary judgment be **DENIED**.

### E.     Plaintiff Is Entitled to Summary Judgment in Its Favor on Count III of the Amended Counterclaim

Count III of the Amended Counterclaim is a claim for breach of the implied warranty of fitness for a particular purpose.  The Amended Counterclaim alleges that: Fleishman bargained for

22

pork ribs that met the requisite specifications for "select" ribs; "[p]rior to Fleishman's purchase of the ribs, Dawn was specifically told that the intended purpose of the ribs" was for Fleishman to "resell them for a profit"; Dawn "knowingly made numerous misrepresentations"; and Dawn "breached the implied warranty of fitness for a particular purpose by allowing these misrepresentations to be made with the intent of inducing Fleishman to purchase the inferior ribs." (ECF No. 27 at ¶¶ 62, 63, 67).

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." Fla. Stat. § 672.315. "A 'particular purpose' differs from an ordinary purpose in that it envisages a specific use by the buyer which is peculiar to the nature of his business." *Royal Typewriter Co., a Div. of Litton Bus. Sys., Inc. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1100 (11th Cir. 1983) (applying Florida law) (citing UCC § 2-315 cmt. 2). In *Royal Typewriter Co.*, the Court rejected Appellees' assertion that renting, as opposed to selling, copiers could qualify as a particular purpose under Fla. Stat. § 672.315. *Id.*

Plaintiff contends that it is entitled to summary judgment on Defendant's counterclaim because "[s]imply re-selling the goods at issue" is not a particular purpose. (ECF No. 58 at 28). Additionally, Plaintiff seeks summary judgment on Fleishman's counterclaim on the ground that Fleishman has failed to come forward with evidence of its damages.

Fleishman's Response does not address Plaintiff's arguments. To the extent the Response has anything to say about the fitness for a particular purpose claim, it merely recounts the evidence of the ribs' defects. Defendant asserts no legally cognizable particular purpose for Count III of its Amended Counterclaim. As such, it has failed to rebut Plaintiff's challenge by adducing competent

evidence of its claim. Accordingly, the undersigned recommends that Plaintiff's Motion for summary judgment in its favor on Count III of the Amended Counterclaim be **GRANTED**.

**F.**     **Plaintiff Is Entitled to Summary Judgment in Its Favor on Counts IV and V of the Amended Counterclaim**

As alleged, Count IV of the Amended Counterclaim is a cause for breach of an oral contract pursuant to which Fleishman agreed to rent frozen storage space to Dawn International at a rate of two cents per pound per month. Count V is a claim for unjust enrichment pled in the alternative to Count IV, arising from the same usage of storage space. The Amended Counterclaim alleges that Dawn International has failed to pay Fleishman over $30,000 in agreed upon cold storage fees.

A claim for breach of contract requires proof of: (1) existence of a contract, (2) material breach of that contract, and (3) damages resulting therefrom. *Vega*, 564 F.3d at 1272. A claimant is entitled to relief for unjust enrichment when (1) a benefit is conferred upon a beneficiary; (2) the beneficiary is aware of the benefit; and (3) under the circumstances, it would be inequitable for the beneficiary to retain the benefit without paying the value thereof. *See Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. 3d DCA 2018).

Plaintiff seeks summary judgment on both Counts. First, Plaintiff argues that Fleishman cannot establish its contract claim because the undisputed evidence shows that no cold storage contract between the Parties exists. For this proposition, Plaintiff cites the testimony of Roy Fleishman in which (1) he said that aside from the purchase orders that Fleishman issues to Dawn, he was not aware of any other contracts between the Parties, and (2) he said "yes" when Plaintiff's counsel asked him if Jacob Fleishman Sales, Inc. and Jacob Fleishman Cold Storage, Inc. are two separate businesses.

Second, Plaintiff argues it is entitled to summary judgment on Fleishman's unjust enrichment claim because (a) to the extent any benefit was conferred, it was conferred by Jacob

Fleishman Cold Storage, Inc. ("Fleishman Storage"), not the Defendant, Jacob Fleishman Sales, Inc. ("Fleishman Sales"), and (b) no benefit was actually conferred. With respect to the latter argument, Plaintiff contends that it requested that Fleishman allow Dawn International to repossess the pork products in dispute but Fleishman refused, which is the cause of the cold storage fees that Fleishman seeks. To make its showing as movant on Count V, Plaintiff again cites to Roy Fleishman's statement that Fleishman Storage and Fleishman Sales are different business, similar statements made by Karen Azari, and both witnesses' acknowledgment that Dawn International ought to be allowed to repossess the pork.

Plaintiff made its initial showing that no contract existed and no benefit was conferred. As such, the burden shifted to Defendant. Fleishman's Response makes no attempt to maintain these claims. Fleishman does not dispute that Fleishman Storage and Fleishman Sales "are two separate businesses," that Fleishman Storage is the operator of a cold storage facility and Fleishman Sales is not, and that Fleishman Sales "has never charged storage fees to" Dawn International. (PSMF at ¶¶ 15–16); (DSMFO at ¶¶ 15–16). Accordingly, Plaintiff is entitled to summary judgment on these Counts. The undersigned recommends that Plaintiff's Motion for summary judgment in its favor on Counts IV and V of the Amended Counterclaim be **GRANTED**.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 58) be **GRANTED in part and DENIED in part**, and Defendant's Motion for Partial Summary Judgment (ECF No. 60) be **DENIED**.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Melissa Damian, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) days** of the date of this Report. Failure to timely file objections

will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

Any response to objections must be filed by no later than **September 11, 2024**. *See* S.D. Fla. L.R. 4(b).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 24th day of August, 2024.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE